UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JACQUELYN H HUBBARD,

     **Plaintiff,**

v.                                   **Case No: 5:16-cv-337-Oc-CEMPRL**

COVENTRY HEALTH CARE OF
FLORIDA, INC. and JUANITA
RANSOM

     **Defendants.**

---

## REPORT AND RECOMMENDATION[1]

In these two consolidated cases, *pro se* Plaintiff Jacquelyn Hubbard complains about each Defendants' alleged failure to explain Medicare benefit exclusions to her.   Plaintiff purportedly proceeds under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*., which is known as the Medicare Act, and she seeks relief in separate cases: one case against Aetna Health, Inc. and one case against Aetna's employee Juanita Ransom.

The Defendants allegedly violated the Medicare Act by behaving rudely when Plaintiff requested explanations of Medicare benefit exclusions and by failing to explain those exclusions to her.   The Defendants, through separate motions, seek dismissal of the claims.   Plaintiff has responded and has also moved to amend her complaint against Defendant Ransom.   As discussed below, I recommend that the motions to dismiss be granted and that the motion to amend be denied.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions.   *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

## I.    PROCEDURAL BACKGROUND

Two cases comprise this dispute: *Hubbard v. Aetna/Coventry Health of Florida, Inc.*, No.

5:16-cv-00337-CEM-PRL (the Aetna Case) and *Hubbard v. Ransom*, No. 5:16-cv-00436-CEM-

PRL (the Ransom Case).

First, Plaintiff filed the Ransom Case in state court and Ransom then removed the case to

this Court.   (Ransom Case Docs. 1, 2).   Ransom asserts that this Court has jurisdiction as the

complaint against her alleges a failure to provide Medicare benefits under the Medicare Act.   I

will refer to the complaint in this case (Ransom Case Doc. 2) as the Ransom Complaint.

Three days after filing the Ransom Case in state court, Plaintiff filed the Aetna Case in this

Court.   (Aetna Case Docs. 1, 14).   Plaintiff appears to assert that this Court has diversity

jurisdiction as she mentions that her claim is in excess of $75,000.00, but she does not otherwise

explain whether she and Aetna are diverse.   In any event, Plaintiff pleads that Aetna violated the

Medicare Act.   Plaintiff then filed an amended complaint (Aetna Case Doc. 14), which I will refer

to as the Aetna Complaint and which is the operative pleading in the Aetna Case.[2]

Ransom then moved to consolidate the cases, and the Court granted the motion for the

following reasons:

> [T]he factual allegations in both cases are nearly identical and appear to take issue
> with the same incident. One case names Juanita Ransom as a Defendant, and the

---

[2] The parties disagree over who the proper Defendant is in the Aetna Case.   Plaintiff asserts, as
consistent with the caption of the Aetna Complaint, that the proper Defendant is Coventry Health Care of
Florida, Inc.   (Aetna Case, Docs. 12, 13, 14).   But Aetna asserts that <u>it</u> is the proper defendant as Aetna
provides Plaintiff with Medicare services:
> Plaintiff references her 'Evidence of Coverage Summit Ideal' which is the contract
> governing the medical health benefits and services provided to her as a member of the
> Coventry Summit Ideal HMO Plan *offered by Aetna Health Inc.* As such, the properly-
> named defendant in this action is Aetna Health Inc., not Coventry Health Care of Florida,
> Inc., as Plaintiff suggests.

(Aetna Case Doc. 15, n.1) (emphasis in the original and citation omitted).   Because Plaintiff asserts that
Coventry Health Care of Florida, Inc. is wholly owned by Aetna, and because Aetna is defending this case,
I will assume that the proper defendant is Aetna.   (Aetna Case Docs. 10, 12, 15, 21).

other names her employer. Both Defendants are represented by the same counsel. And, both cases complain of violations of purported "[f]ederal[ly] protected rights" associated with the Medicare scheme. Lastly, Plaintiff failed to timely oppose the request for consolidation.

(Ransom Case Docs. 4, 11; Aetna Case Doc. 18).   The Court designated the Aetna Case as the lead case, which all filings for either case are now docketed in.   (Aetna Case Doc. 18; Ransom Case Doc. 11).   Both Aetna and Ransom have moved to dismiss the respective complaint against them.   (Aetna Case Doc. 15; Ransom Case Doc. 7).

Recently, Plaintiff moved to amend her complaint against Ransom, and Plaintiff has attached to that motion a proposed amended complaint, which I will refer to as the Proposed Ransom Complaint (Aetna Case Doc. 19-1).   Ransom opposes Plaintiff's motion to amend. (Aetna Case Doc. 21).   The two motions to dismiss, and the motion to amend, have all been referred to me.

Finally, Plaintiff has also responded to Aetna's motion to dismiss.   (Aetna Case Doc. 23). Although the response is late, the Court will review it.

## II.   FACTUAL BACKGROUND[3]

These cases arise from Plaintiff's alleged attempt to obtain a clarification of her Medicare benefits.   Plaintiff pleads that she is a Medicare enrollee and a member of Coventry Health Care of Florida, Inc.   (Ransom Case Doc. 2).   Coventry is an Aetna company and provides Medicare Advantage and Prescription Drug plans.   *See* http://coventryhealthcare.com/ *and* http://coventry-medicare.coventryhealthcare.com/.

In early 2016 (or early 2015), Plaintiff emailed Aetna's employee Defendant Ransom. Plaintiff wanted an explanation of Medicare benefit exclusions included in the Evidence of

---

[3] The background "facts" are taken from the Aetna Complaint and the Ransom Complaint, which are functionally identical.

Coverage Summit Ideal (the Evidence of Coverage).[4]   (Aetna Case Doc. 14, ¶¶ 6–11; Ransom Case Doc. 2, ¶¶ 6–7).   The exclusions at issue center on what Plaintiff calls a "Skilled Nursing Facility benefit."   (Aetna Case Doc. 14, ¶¶ 6–10; Ransom Case Doc. 2, ¶ 7).

When Ransom returned the email, Ransom's email contained these comments: "Hi James, You want this on[e]? She is always a problem."   (Aetna Case Doc. 14, ¶ 12; Ransom Case Doc. 2, ¶ 7).   Additional emails took place, some between Plaintiff and Ransom, and other emails between Ransom and other Aetna employees who are not named as defendants in these cases.[5] (Aetna Case Doc. 14, ¶¶ 14–16).   Yet neither Ransom nor the other Aetna employees were able to explain the Medicare benefit exclusions to Plaintiff.   (Aetna Case Doc. 14, ¶ 13–14).

Plaintiff then filed a grievance.   She filed the grievance with Aetna's Medicare Complaint Department, which sent Plaintiff several apologies for Ransom's response to Plaintiff's email. (Aetna Case Doc. 14, ¶¶ 20–22; Ransom Case Doc. 2, ¶¶ 10–11).   And Plaintiff received an email from the Department of Health and Human Services, which also contained an apology.[6]

Based on these alleged acts, Plaintiff brought these suits and asserts that Defendants have violated Plaintiff's Medicare rights by acting with malice, recklessness, and indifference.   (Aetna Case Doc. 14, ¶¶ 5, 24; Ransom Case Doc. 2, ¶ 5).

---

[4] According to Plaintiff, "[t]he Evidence of Coverage is the legal contract for all Medicare Advantage members and [is] approved by Medicare."   (Ransom Case Doc. 2, ¶ 7).

[5] Plaintiff does assert that Aetna employees other than Ransom knew how Ransom treated Plaintiff and Plaintiff concludes that these other employees "failed in their duties as managers of Coventry Health Care to adhere to Federal laws."   (Aetna Case Doc. 14, ¶ 23).

[6] That email states the following:

> This response is in reply to your email regarding your plan failing to provide explanation for why Skilled Nursing Benefit was excluded from the Evidence of Coverage contract year, and also regarding the plan demonstrating any disrespect toward you. I am very sorry to hear of the trouble that you have experienced.

(Aetna Case Doc. 14, ¶ 22; Ransom Case Doc. 2, ¶ 12).

### III.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).   In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*.   First, the court will "eliminate any allegations in the complaint that are merely legal conclusions."   *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).   Then, "where there are well-pleaded factual allegations," the court will "'assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.'"   *Id.*

(quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8

(and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-

pleaded factual allegations, documents central to or referenced in the complaint, and matters

judicially noticed."   *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct

rather than the unlawful conduct the plaintiff would ask the court to infer."   *Am. Dental Ass'n*,

605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

## IV.   DISCUSSION

As noted above, Plaintiff is proceeding *pro se* in this action.   Nevertheless, *pro se* litigants

are "still required to conform to procedural rules, and the court is not required to rewrite a deficient

pleading."   *Washington v. Dept. of Children and Families*, 256 F. App'x 326, 327 (11th Cir.

2007).   Upon review, Plaintiff's Aetna Complaint and Ransom Complaint are both deficient, and

Plaintiff's Proposed Ransom Complaint is too.

### A.      The Motions to Dismiss

Defendants argue that, under the federal pleading standards, the Aetna and Ransom

Complaints fail to state any claim upon which Plaintiff is entitled to relief.   (Aetna Case Doc. 15;

Ransom Case Doc. 7).   I agree.

Plaintiff purports to proceed under the Medicare Act.   "Title XVIII of the Social Security

Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 *et seq*., commonly known as the Medicare Act,

establishes a federally subsidized health insurance program to be administered by the Secretary."

*Heckler v. Ringer*, 466 U.S. 602, 605 (1984).   "The Medicare Act establishes a comprehensive

remedial scheme, providing both administrative hearing rights . . . and judicial review of the Secretary's final decisions." *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004).

"A claim 'arises under' the Medicare Act if the Act provides both the 'standing and the substantive basis for the presentation' of plaintiff's claims." *Acquisto v. Secure Horizons ex rel. United Healthcare Ins. Co.*, No. 2:08-CV-847-FTM-29, 2011 WL 6780870, at *5 (M.D. Fla. Dec. 27, 2011), *aff'd in part*, 504 F. App'x 855 (11th Cir. 2013) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975) and citing *Ringer*, 466 U.S. at 615).   Examples of claims that may proceed under the Medicare act include "a claim which is inextricably intertwined with a claim for benefits[;] a claim which is 'essentially one requesting the payment of benefits[;]' a claim for the return of premiums[;] and constitutional or statutory claims which cannot be resolved administratively, but nevertheless must be channeled through the administrative process." *Id.* (quoting *Ringer*, 466 U.S. at 614, 620 and citing *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141–42 (9th Cir. 2010), *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293 (11th Cir. 2004)) (footnote and citations omitted).

When a plaintiff's claims "arise under" the Medicare Act, "[t]hose claims may be brought only through established federal administrative procedures, which require presentation to the appropriate federal agency, exhaustion of administrative remedies and the issuance of a final decision *before* a plaintiff may seek judicial review by a federal court." *Bayou Shores SNF, LLC v. Burwell*, No. 8:14-CV-1849-T-33MAP, 2014 WL 4059900, at *4 (M.D. Fla. Aug. 15, 2014), *appeal dismissed* (Oct. 3, 2014) (emphasis added); 42 U.S.C. §§ 405(h)–(g), 1395ii.   "[A] 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his [or her] claim through all designated levels of administrative review," which includes a hearing before

an administrative law judge.   *Ringer*, 466 U.S. at 606.

Here, Plaintiff purports to proceed under the Medicare Act.   She pleads that Defendants have violated her Medicare rights with malice, recklessness, and indifference.   But Plaintiff does not cite to any provision of the Medicare Act as the basis for her claims.   And though her Complaints state that Defendants were rude and that Defendants failed to explain certain Medicare benefit exclusions (Docs. 2, ¶ 10 and 14, ¶ 20), Plaintiff never states whether the exclusions at issue have affected her Medicare benefits—nor does she explain how, if at all, the exclusions have otherwise affected her.

To support her allegations, Plaintiff cites to the Evidence of Coverage and the Medicare.gov Website.   (Aetna Case Doc. 2, ¶¶ 8, 9; Ransom Case Doc. 14, ¶¶ 17, 19).   For example, Plaintiff quotes the Medicare.gov Website that Medicare members are to "[b]e treated with dignity and respect at all times," that members receive "clear and understandable explanations for all benefits," and that members "[b]e protected from discrimination. Every company or agency that works with Medicare must obey the law, and can't treat you differently because of your race, color, national origin, disability, age, religion, or sex."   (Docs. 2, ¶ 9; 14, ¶ 17).   And Plaintiff quotes the Evidence of Coverage: "[Aetna's] plan must obey laws that protect you from discrimination or unfair treatment."   (Docs. 2, ¶ 8, 14, ¶ 19).

Yet Plaintiff fails to plead that (or explain how) the Medicare.gov Website or the Evidence of Coverage allow her to proceed under the Medicare Act; nor does Plaintiff otherwise plead that (or explain how) the Medicare.gov Website or the Evidence of Coverage vest her with a cause of action in this Court.

Given this lack of citation to a specific provision of the Medicare Act (or a regulation or an administrative ruling thereunder), along with Plaintiff's failure to state how the exclusions at

issue have affected her, it is impossible to determine whether Plaintiff is bringing claims which are inextricably intertwined with a claim for benefits; claims requesting the payment of benefits; claims for the return of premiums; or constitutional or statutory claims relating to the Medicare Act. *See Acquisto*, 2011 WL 6780870 at *5.

In other words, it is impossible to infer from the pleadings whether Plaintiff's claims arise under the Medicare Act.[7]   And if Plaintiff's claims do not arise under the Medicare Act, Plaintiff does not otherwise state adequate grounds for them.

There is also another issue.   Even assuming that Plaintiff is bringing claims under the Medicare Act, she has not plead that this Court has jurisdiction over such claims: Plaintiff does not allege whether she either exhausted her administrative remedies or whether she received a final decision on an administrative claim.   *See, e.g.*, *Bayou Shores SNF, LLC*, 2014 WL 4059900 at *6 ("[F]ederal jurisdiction over any claim 'arising under' the Medicare statute is limited to the instance in which the complainant has first presented its challenge to the Secretary, has exhausted its administrative remedies, and then seeks judicial review of the agency's final decision."). Indeed, the Complaints only reference a few emails between her and Ransom; a few emails between her and other Aetna employees; and a single email between her and the Department of Health and Human Services.

In sum, the Complaints, as currently plead, fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015), and they fail "to identify [the] claims with sufficient clarity to enable the defendant[s] to frame a responsible pleading." *Sledge v.*

---

[7] And as to Defendant Ransom, even assuming that Plaintiff can proceed under the Medicare Act, Plaintiff does not plead or explain how Ransom is liable under the Medicare Act in Ransom's individual capacity.

*Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001).   Accordingly, I submit that both motions to dismiss are due to be granted in their entirety.

Lastly, Plaintiff's response (Aetna Case Doc. 23) does not compel a contrary conclusion. The response explains that Plaintiff has still not received an explanation of why the Skilled Nursing Facility is an exclusion.   Yet, again, Plaintiff fails to state—or explain how—Defendants' failure to explain exclusions constitute claims that arise under the Medicare Act.   And the response does not otherwise state another legal basis for Plaintiff's claims.

The response also states that any administrative review of Plaintiff's claims was unnecessary as Defendants have admitted fault by acknowledging that they were disrespectful to Plaintiff.[8]   But this conclusion lacks any legal support, and Plaintiff does not explain why an acknowledgment of rude conduct permits Plaintiff to proceed under the Medicare Act without exhausting her administrative remedies.   So, Plaintiff's current pleadings do not state claims for relief and her response does not remedy this deficiency.

### B.    The Motion to Amend

Ransom argues that Plaintiff's motion to amend the Ransom Complaint is futile.   (Aetna Case Doc. 21).   I agree that the Proposed Ransom Complaint will not resolve the deficiencies described *supra* and thus this proposed amendment is indeed futile.

Where, as here, a party moves to amend a pleading after the time in which the right to amend as a matter of course has run, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).   In making the determination, "a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the

---

[8] Plaintiff has attached to her response a letter and two emails, all of which contain apologies for the treatment Plaintiff received.   (Aetna Case Doc. 23-1).

futility of the amendment."   *Local 472 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting v. Ga. Power Co.*, 684 F.2d 721, 724 (11th Cir. 1982).   "'The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied.'"   *Raja v. Englewood Cmty. Hosp., Inc.*, No. 8:12-CV-02083-JDW, 2013 WL 5964589, at *3 (M.D. Fla. Nov. 7, 2013) (quoting *Ala. State Port Auth. v. China Ocean Shipping (Group) Co.*, No. 08–00058–CG–B, 2008 WL 4701046, at *2 (S.D. Ala. Oct. 21, 2008)).

Here, Plaintiff's Proposed Ransom Complaint is nearly identical to the Ransom Complaint, which is due to be dismissed (as stated *supra* Section IV.A.).   In fact, the Proposed Ransom Complaint adds only two paragraphs.   (Aetna Case Doc. 19-1, ¶ 13).

The paragraphs describe a "Formal Sales Meeting" that Ransom allowed Plaintiff to attend after Ransom asserted that Plaintiff could not join the meeting.   The paragraphs also reference two Medicare Regulations (42 C.F.R. §§ 422.2268, 423.2268),[9] along with chapter three of The Centers for Medicare and Medicaid Medicare Marketing Guidelines (the Guidelines), which is attached to the Proposed Ransom Complaint.   And Plaintiff states that Ransom violated the Medicare Act because there is no authority in the regulations or the Guidelines that allow a Medicare member, who is also a broker, to be excluded from a meeting (a meeting that Plaintiff was apparently allowed to attend).   (Aetna Case Doc. 19-1, ¶ 13).

Yet Plaintiff points to no part of the regulations or the Guidelines to show that they vest Plaintiff with a right to attend the meeting in question (and Plaintiff does not otherwise explain how they do vest her with such a right).   Nor does Plaintiff explain how a mere assertion that

---

[9] The regulations describe the standards for Medicare Advantage Marketing activities and the standards for Medicare Part D Marketing activities.   42 C.F.R. §§ 422.2268, 423.2268.

- 12 -

Plaintiff could not attend the meeting violated the regulations or the Guidelines (and she does not explain how the other alleged wrongful acts of indignant treatment and failure to explain benefits violated the regulations or the Guidelines).

And yet another issue remains.   The Proposed Ransom Complaint does not address how the Medicare Act allows Plaintiff to proceed against Ransom in Ransom's individual capacity.

So, too, like the other Complaints, the Proposed Ransom Complaint does not state a claim for relief.   Thus the Proposed Ransom Complaint will not survive Ransom's motion to dismiss, and the motion to amend, as plead, is futile and is due to be denied at this time.   *Raja*, 2013 WL 5964589 at *3.

## V.   RECOMMENDATION

For the reasons stated above, and upon due consideration, it is respectfully **RECOMMENDED** that the motions to dismiss (Doc. 15 in 5:16-cv-337 and Doc. 7 in 5:16-cv-436) be **GRANTED** and that the motion to amend (Doc. 19 in 5:16-cv-337) be **DENIED**.

**DONE** and **RECOMMENDED** in Ocala, Florida on September 13, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties